IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRIS JANCICH,
On behalf of himself
and all other persons similarly situated,

    *Plaintiff,*

  vs.                                              Case No. 11-2602-EFM

STONEGATE MORTGAGE
CORPORATION,

    *Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff Chris Jancich, on behalf of himself and others similarly situated, filed this case against Defendant Stonegate Mortgage Corporation for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. The Court granted conditional certification of the class on February 6, 2012. As of this date, there are twelve former loan officers who have opted into the collective class. Discovery has closed, and the matter is before the Court on Defendant's Motion to Decertify (Doc. 98). Because the Court finds that Plaintiffs are similarly situated, the Court denies Defendant's motion.

**I.      Factual and Procedural Background**

Plaintiff Chris Jancich filed this collective action on November 3, 2011, seeking unpaid minimum wages and overtime wages on behalf of himself and other similarly situated loan

officers employed by Defendant Stonegate Mortgage Corporation ("Stonegate"). Stonegate is an Indiana corporation, with its headquarters in Indianapolis, and was founded in 2005. It acquires loans and retains the mortgage servicing rights on a retail, wholesale, and correspondent basis through a network of retail branches and approved third-party originators. Stonegate has retail branches in several states, and its offices in Indiana, Kansas, and Ohio are at issue in this class action.

Generally, a Stonegate loan officer's job duties included identifying prospective loan applicants, assessing whether those applicants would qualify for a loan product, pulling the necessary information for loan applications, compiling the essential loan forms, and submitting the loan application for processing and underwriting. Most of the Plaintiffs worked out of one of Defendant's offices, but several Plaintiffs worked out of a satellite office, or out of their home as a business office. Plaintiffs performed some marketing activities, and the amount of hours each Plaintiff performed varied.

Until February 15, 2009, loan officers were paid commissions based on 50% to 65% of the gross revenue of a funded loan, plus $425 per funded loan, less a $300 branch fee per funded loan ("the Revenue Percentage Commission Plan"). From February 15, 2009, through October 1, 2010, loan officers were paid commissions based on a basis points system ("the Basis Points Commission Plan"). From October 1, 2010, through the present, loan officers are paid a twice-monthly draw of $650 to $750, as well as commissions based on basis points earned per funded loan ("the Draw/Commission Plan"). Several of the opt-in Plaintiffs negotiated variations on these plans for the first few months of their employment.

Prior to October 1, 2010, Stonegate treated its loan officers as exempt, relying on the United States Department of Labor ("DOL") Administrator's Opinion Letters FLSA2006-11 and

FLSA2006-31.  Thus, Stonegate did not require loan officers to record their hours worked.  As of October 1, 2010, Stonegate began treating its loan officers as non-exempt because of the DOL's Administrator's Interpretation No. 2010-1.  Stonegate directed its employees to record time worked in time-tracking software, Timeforce.  Several opt-in Plaintiffs testified that they recorded their overtime hours and were paid for those overtime hours.

Of the thirteen Plaintiffs, Defendant has deposed eight of them.  All deposed Plaintiffs testified that Defendant's management representatives expressly instructed them to record only forty hours of work per week, despite the actual number of hours worked.  All deposed Plaintiffs testified that they worked in excess of forty hours per week.

On February 6, 2012, this Court certified a collective class, with the time period running from February 9, 2009, forward.  Discovery has closed.  Now, Defendant seeks decertification of the collective class asserting that Plaintiffs are not similarly situated.

## II.     Legal Standard

When considering a motion to decertify a collective class, the "overriding question" is whether the plaintiff and the opt-in plaintiffs are similarly-situated for purposes of § 216(b).[1]  The standard at this second stage is stricter than the standard utilized at the certification, or notice, stage.[2]  At the decertification stage, the court reviews several factors, including (1) different factual and employment settings of the individual plaintiffs, (2) individualized defenses available to the defendant with regard to each plaintiff, and (3) fairness and procedural considerations.[3]  The Court will consider each factor.

---

[1] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

[2] *Id.* at 1102-03.

[3] *Id.* at 1103.

### III.     Analysis

*1. Factual Disparities*

Defendant contends that there are disparate factual settings because (1) different pay plans applied to each Plaintiff, (2) not all Plaintiffs tracked their hours worked, (3) Plaintiffs' job duties varied, and (4) Plaintiffs worked in different offices under different supervisors. Plaintiffs argue that there are substantial common facts with only small distinctions between each Plaintiff. In addition, Plaintiffs assert that these small differences would only be relevant to damages calculations.

Defendants emphasize that there were three different pay plans applicable to Plaintiffs over the relevant time period. With regard to one pay plan, however, it is only relevant to one week of work during the class period.[4] Thus, in reality, only two different pay plans are at issue. With regard to these two pay plans, it appears as though they were uniformly applied to all Plaintiffs working for Defendants at that particular time. For example, from February 15, 2009, through October 1, 2010, all Plaintiffs were subject to the Basis Points Commission Plan. From October 1, 2010, through the present, all Plaintiffs were subject to the Draw/Commission Plan. Defendants rely upon *Beauperthuy v. 24 Hour Fitness USA, Inc*.[5] for support that different pay plans require decertification. The facts in *Beauperthuy* are vastly different than this case because there were multiple compensation plans in effect over the years, and the parties did not provide evidence as to when each of these plans were in effect.[6] In this case, there are not numerous pay

---

[4] This week is February 9, 2009, through February 15, 2009, when the Revenue Percentage Commission Plan was in effect.

[5] 772 F. Supp. 2d 1111 (N.D. Cal. 2011).

[6] *Id.* at 1125. In addition, the class in *Beauperthuy* is not analogous at all to the class in this case. In *Beauperthuy*, the relevant class period encompassed almost ten years and included approximately 772 individuals

plans to consider. There are only three, with only one pay plan in effect at any given time. The only distinction is timing. The court can consider the Revenue Percentage Commission Plan for one week, the Basis Points Commission Plan for one period, and the Draw/Commission Plan for the other period. Although several Plaintiffs were subject to both plans, it appears that the Court can easily determine the applicability of both plans.[7]

Furthermore, although Defendant contends that Plaintiffs' job duties varied, these differences are insignificant. The small differences primarily relate to whether Plaintiffs performed some marketing activities for Defendant. The vast majority of the work that Plaintiffs performed as loan officers was substantially similar. Plaintiffs' duties in performing several additional hours of marketing work would simply go to determining Plaintiffs' hours worked and the damages that Plaintiffs may be entitled to.

Finally, the fact that Plaintiffs worked in different offices under different supervisors is an insufficient basis to conclude that Plaintiffs are not similarly situated. Although the geographic locations and supervisors may vary, it appears that the same standard—whether it be the pay plan in effect or the direction to record no more than forty hours in Timeforce–was consistent between locations.[8] Thus, the Court concludes that Plaintiffs' factual and employment settings are sufficiently similar.

---

with fifteen different job titles. In this case, the class covers a three-year period, and there are only thirteen Plaintiffs who all occupied the same position of loan officer.

[7] Defendants' graph of Plaintiffs and pay plans illustrates the ability to easily separate out time periods and Plaintiffs.

[8] *See, e.g, Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Penn. 2000) (stating that "variations in the plaintiffs' duties, job locations, and hourly billing rates do not differentiate the collective basis of the class to the extent that it defeats the primary objective of a § 216(b) action.").

### *2. Individualized Defenses*

Defendant next argues that it will present individualized defenses as to Plaintiffs' claims. Specifically, Defendant contends that the administrative or outside sales exemption may be applicable to certain Plaintiffs but not to all Plaintiffs. Even if the exemption was applicable to all Plaintiffs, Defendant asserts that the Court would have to perform an individualized inquiry as to Plaintiffs' job duties to determine whether the exemption was indeed applicable. Plaintiff argues that the exemptions claimed by Defendants are not applicable to Plaintiffs.[9]

In this case, although Defendant asserts that it will assert highly individualized defenses, the determination does not appear to be highly individualized. Defendant contends that from February 9, 2009, through October, 1, 2010, it treated its loan officers as exempt. Defendant states that this was proper because it relied on two DOL opinions which provided that loan officers could be classified as administrative and outside sales exempt employees. Thus, the initial legal issue could be decided across the board—whether Defendant can be held liable if it in good faith relied upon these DOL opinions. If there is a finding that Defendant cannot rely upon those DOL opinion letters, the issue can still be decided as a class. Because all Plaintiffs performed substantially similar duties, and Defendant classified all of its loan officers as exempt employees during this time period, whether the claimed administrative exemption is indeed applicable could be determined across the board.[10]

---

[9] On a motion to decertify, the Court does not resolve the propriety of the classification of exempt employees but rather resolves the issue of whether Plaintiffs are similarly situated. *See Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1097 (D. Kan. 2012) (citation omitted).

[10] *See Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1351 (N.D. Ga. 2002) (finding that because the Court had determined that Plaintiff's job duties were substantially similar, the Court could adjudicate the claimed exemption collectively).

Although Defendant claims that the administrative exemption does not apply to all Plaintiffs, this is only so because of the time period. Defendant claimed the exemption from February 9, 2009, through October, 1, 2010, and

With regard to Defendant's argument as to the later time period (when it did not classify its employees as exempt), it contends that the evidence demonstrates that some of its employees were indeed paid overtime. This issue is one of primarily damages. All deposed Plaintiffs testified that they were instructed to only record forty hours a week in Timeforce, despite allegedly working more hours. If some employees were indeed paid some overtime hours, the issue does not warrant decertification. Instead, it would go to calculating Plaintiffs' damages. Accordingly, this factor weighs in Plaintiffs' favor.

### 3. Fairness and Procedural Considerations

Finally, fairness and procedural considerations weigh in Plaintiffs' favor. "The FLSA's collective action has an important remedial purpose: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity."[11] The class only has thirteen people, so the size is not unmanageable. Allowing Plaintiffs to proceed in one action is much more efficient than requiring twelve plaintiffs to re-file additional lawsuits and start over with substantially similar issues. Although there may be some individualized factual determinations, particularly as to damages, these are not so numerous to defeat the efficiency of trying the action as a collective class. Based on all the evidence before the Court, the Court finds that decertification is unwarranted.

---

thus, it will only be applicable to those Plaintiffs under that pay plan. After October 1, Defendant does not claim its loan officers are exempt. In short, the Court can easily divide Plaintiffs into different groups and decide the issues across the board.

[11] *Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1273, 1281 (D. Kan. 2012) (quotations marks and citation omitted).

**IT IS ACCORDINGLY ORDERED** this 17th day of March, 2014, that Defendant's Motion for Decertification (Doc. 98) is hereby **DENIED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE